**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-2980WM

_____

| | | |
|---|---|---|
| Michael E. Brown, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Seitz Foods, Inc. Disability Benefit Plan; | * | District of Missouri. |
| Continental Casualty Company, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: March 12, 1998
Filed: April 14, 1998

_____

Before FAGG, ROSS, and BOWMAN, Circuit Judges.

_____

FAGG, Circuit Judge.

The Seitz Foods, Inc. Disability Benefit Plan (the Plan) and the Plan's administrator, Continental Casualty Company (Continental), appeal the district court's order granting Michael E. Brown benefits under the Plan, which is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 (1994) (ERISA). We reverse.

Brown was a full-time sales representative with Seitz Foods. To cover his sales territory, Brown had to drive as many as 1000 miles a week. On May 19, 1992 Brown

suffered a whiplash-type injury in an auto accident. He worked at his sales job on and off in the months that followed, then returned to full-time status in late November and continued working (except for three weeks in January) until he was fired on March 4, 1993 for attempting to cheat the company. Toward the end of his employment with Seitz Foods, Brown was no longer working his territory, but he continued doing sales work to the end. Just before he was fired, Brown applied for total disability benefits under the Plan. As defined in the summary plan description (SPD), and leaving aside parts of the definition not relevant here, "total disability" means the employee is "continuously unable to perform the substantial and material duties of [his or her] regular occupation." Although Brown's coverage ended when he was fired, the Plan provided "[t]ermination will not affect a covered loss [that] began before the date of termination." Thus, to receive benefits, Brown had to show he had become continuously unable to perform the duties of his occupation before he was fired.

Unsurprisingly, Continental denied Brown's claim. In a letter dated October 4, 1993, Continental informed Brown of its decision and of Brown's right to supplement the administrative record and appeal. Brown did appeal, unsuccessfully. In its March 9, 1994 letter to Brown's attorney, the Appeals Committee pointed out the obvious: Brown was able to do sales work right up to the date he was fired. The Committee also noted that Brown's own physician, Dr. Mohsen, believed him capable of working at his regular occupation. Dr. Mohsen recommended Brown be allowed to break up long drives with periods of stretching and rest, but added "that doesn't mean that [Brown] cannot be engaged in sales and driving." Another examining physician, Dr. Lin, could find no objective evidence of disability. The administrative record also included the statements of three other physicians, Drs. Pazell, Paff, and Briggs. Dr. Paff evaluated Brown's condition at the request of Brown's attorney three days before Brown was fired. In Dr. Paff's opinion, Brown was able to work eight hours a day, as Brown's job required. Dr. Pazell reported Brown would be able to work only six hours a day. Continental discounted Dr. Pazell's report, however, because it was dated January 12, 1994, more than ten months after Brown's coverage had ceased. Dr. Briggs's report

states he never authorized Brown to stop working, and concludes with the terse remark: "Patient not disabled by me."

After Continental denied his claim, Brown filed this lawsuit under 29 U.S.C. § 1132(a)(1)(B) (1994). The district court decided to admit evidence outside the record on which Continental had based its decision. This evidence included the statement of Wilbur Swearingin, a rehabilitation consultant, that Brown had been unable to perform his job duties from the date of the accident. Swearingin's reports in the district court record are dated March 1995 and August 1996. Swearingin first evaluated Brown on October 5, 1993, the day after Continental first rejected Brown's claim and months before Continental's Appeals Committee affirmed that decision, yet nothing from Swearingin appears in the administrative record. The district court also admitted the statement of Dr. Terry Winkler, who seconded Swearingin's assessment based on a physical examination performed in February 1995. The district court then reviewed Continental's decision de novo, concluded Brown "has remained totally disabled from May 19, 1992 through the present," and awarded Brown past and future disability benefits together with attorney's fees and expenses. This appeal followed.

Continental first contends the district court should have reviewed Continental's denial of benefits for abuse of discretion. Brown defends de novo review in this case because the Plan did not give Continental "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). To support its contention that the Plan did grant Continental the discretionary authority necessary to secure deferential review of its benefit decisions, Continental quotes as follows from the SPD:

> To be considered disabled, you must be under a doctor's care. Normally, your own physician determines the degree of physical impairment caused by the disabling condition. Temporary disabilities are covered as long as the definition of total disability is satisfied.

> Written proof of loss must be furnished to us within 90 days after the end of a period for which We are liable. . . . Benefits will be paid monthly immediately after We receive due written proof of loss.

According to Continental, phrases and words like "[t]o be considered disabled," "[n]ormally," "as long as the definition of total disability is satisfied," and "due . . . proof of loss" necessarily imply Continental's discretionary authority to decide claims. We disagree. The provisions Continental quotes "read like a typical insurance policy" and "do not trigger the deferential ERISA standard of review." Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust, 85 F.3d 398, 402 n.2 (8th Cir. 1996); see also Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994) (ERISA plan provision stating claims will be paid after plan's administrator "receives adequate proof of loss" does not express intent to confer discretion). The proper way to secure deferential court review of an ERISA plan administrator's claims decisions is through express discretion-granting language. See Bounds, 32 F.3d at 339.

Whether the district court rightly admitted evidence outside the administrative record before conducting its de novo review is a different question. Such additional evidence gathering is ruled out on deferential review, and discouraged on de novo review to "'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'" Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641-42 (8th Cir. 1997) (quoting Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993)). A district court may admit additional evidence in an ERISA benefit-denial case, however, if the plaintiff shows good cause for the district court to do so. See Ravenscraft, 85 F.3d at 402. Brown made no such showing. See Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir. 1992) (discussing factors relevant to a showing of good cause). He offered and offers no explanation why he could not have timely provided Continental favorable evaluations of his claim, like Swearingin's. If Brown believed the evidence he

introduced at trial "was necessary for [Continental] to make a proper benefits determination, [Brown] should have obtained this evidence and submitted it to [Continental]." Id. Having failed to take advantage of the opportunity to supplement the record for the Appeals Committee, or to explain his failure to do so, Brown's offer of additional evidence outside the administrative record is "nothing more than a last-gasp attempt to quarrel with [Continental's] determination." Id.

Absent any showing of good cause on Brown's part, we conclude the district court abused its discretion when it reviewed Continental's decision on an expanded factual record. See Donatelli, 992 F.2d at 765. The only conclusion Continental's record reasonably supports is the one Continental reached. Thus, the district court's finding that Brown was totally disabled was clearly erroneous. See id. We would reach the same conclusion even on the expanded record. Although Swearingin's and Winkler's opinions gave the district court a toehold for its decision, on the entire record we are left with the definite and firm conviction that a mistake has been made. See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Undisputed evidence establishes Brown was working in sales when he was fired and his disability coverage lapsed. Notwithstanding Winkler's and Swearingin's tardy evaluations, it follows inescapably from the evidence considered as a whole that Brown was not totally disabled as the Plan defines that term. See id. at 573-74; Johnson v. Arkansas State Police, 10 F.3d 547, 552 (8th Cir. 1993) (findings clearly erroneous when they fail to draw inferences the reviewing court finds inescapable from the record).

We vacate the district court's award of past and future disability benefits. Attorney's fees awards in ERISA cases are governed by a five-factor test, see Dodson v. Woodmen of the World Life Ins. Soc'y, 109 F.3d 436, 440 (8th Cir. 1997), but Brown is no longer the prevailing party, so we also vacate the district court's award to Brown of attorney's fees and expenses, see McIntosh v. Pacific Holding Co., 992 F.2d882, 885 (8th Cir. 1993).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.